BIRDSBORO MUNICIPAL
AUTHORITY, Appellant,
(At 182 MDA 2000),

v.

READING COMPANY AND WILMINGTON & NORTHERN RAILROAD, a corporation; Chestnut Hill B & M, Inc.; Steven Speece; Consolidated Rail Corporation; Haines & Kibblehouse, Inc.; John Penn; Thomas Penn; Richard Penn; Windsor Service Inc.; Diamond Contractors, Inc.; Daniel Boone Development Company; F.M. Brown Sons, Inc.; Heirs Successors in Title Personal Representatives or Assigns, Any Unknown Persons Having or Claiming an Apparent Interest in the Premises, Appellees.

Birdsboro Municipal Authority,
Appellee,

v.

Reading Company and Wilmington & Northern Railroad, a corporation; Chestnut Hill B & M, Inc.; Steven Speece; Consolidated Rail Corporation; Haines & Kibblehouse, Inc.; John Penn; Thomas Penn; Richard Penn; Windsor Service Inc.; Diamond Contractors, Inc.; Daniel Boone De-

velopment Company; F.M. Brown Sons, Inc.; Heirs Successors in Title Personal Representatives or Assigns, Any Unknown Persons Having or Claiming an Apparent Interest in the Premises.

Appeal of Windsor Service, Inc.
(At 378 MDA 2000).

Superior Court of Pennsylvania.

Argued June 22, 2000.

Filed Aug. 10, 2000.

Kenneth Millman, Wyomissing, for Birdsboro.

Byron M. Yatron, Reading, for Windsor Service.

Michael K. Coran, Philadelphia, for Haines & Kibblehouse.

BEFORE: CAVANAUGH, DEL SOLE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Birdsboro Municipal Authority (Birdsboro) and Windsor Service, Inc. (Windsor), cross-appeal from the judgments entered following the June 15, 1999 order disposing of the parties' claims with respect to a tract of land located within Berks County, Pennsylvania.[1]

¶ 2 Birdsboro initiated this quiet title action and averred it had fee simple title pursuant to a 1962 Deed. Both Windsor and Haines & Kibblehouse, Inc. (H & K),

---

1. Birdsboro Municipal Authority (Birdsboro) appeals from the December 22, 1999 judgment entered in favor of Haines & Kibblehouse, Inc. (H & K). Windsor Service, Inc. (Windsor) appeals from the July 11, 2000 judgment entered in favor of Birdsboro. We note that, pursuant to Pa.R.A.P. 905, **Filing of Notice of Appeal**, Windsor's February 8, 2000 notice of appeal is treated as having been filed after the applicable July 11, 2000 entry of judgment.

filed answers and new matter. Windsor argued it had fee simple title to the disputed property pursuant to a 1965 Deed. H & K opposed Birdsboro's action, contending it has a right-of-way over the disputed land pursuant to an 1867 Deed.

¶ 3 Following a non-jury trial, the trial court found Birdsboro holds fee simple title to the disputed land subject to H & K's right-of-way. Both Birdsboro and Windsor filed motions for post-trial relief, seeking judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court denied the parties' motions and these appeals followed.

¶ 4 Birdsboro's statement of questions presented allege the trial court erred in:

- Failing to find H & K waived its right-of-way argument by failing to file a counterclaim or otherwise seek affirmative relief in its pleadings;
- Determining that H & K possessed a right-of-way where the evidence indicates the deed purporting to grant the right-of-way was unrecorded, unsigned and violative of the Statute of Frauds; and
- Failing to find H & K and/or its predecessors abandoned their interests in the disputed land.

See generally Appellant/Birdsboro's brief at 3.

¶ 5 In its appeal, Windsor questions only whether the trial court erred in holding it does not own fee title to the disputed land.

¶ 6 Beginning in the 1800's, the family of Edward and George Brooke (the Brookes) had fee simple title to several thousands of acres of land, including the disputed land. Sometime thereafter, the Brookes formed the E & G Brooke Land Company (E & G). The Brookes, along with adjoining property owners, conveyed a right-of-way

interest in their land to the Wilmington and Reading Railroad Company (WRRR) pursuant to an unrecorded deed dated April 8, 1867. The deed contains the signatures of all property owners who conveyed a right-of-way to WRRR.[2] WRRR's right-of-way on the Brookes' property was through the disputed land.

¶ 7 WRRR constructed and began operating a railroad line over the land in 1870. By 1877, WRRR was insolvent and, following a public sale approved by U.S. District Court for the Eastern District of Pennsylvania, WRRR conveyed its right-of way to the newly formed Wilmington & Northern Railroad (WNRR) in a recorded deed dated September 29, 1877.

¶ 8 On December 21, 1962, E & G conveyed its fee simple title to Birdsboro by recorded deed. The deed set forth several exceptions and reservations, including the reservation of WNRR's right-of-way. Thereafter, the Reading Company took control of WNRR and operated the railroad line until 1978 when it conveyed its right-of-way to Consolidated Rail Corporation (Conrail). In 1986, Conrail filed an application to abandon its service on the line of railroad track with the Interstate Commerce Commission (ICC). Despite having received abandonment authorization by the ICC, Conrail took no further steps to complete the abandonment.

¶ 9 On May 22, 1965, E & G conveyed property to the Daniel Boone Development Company (DBDC). The property conveyed to Birdsboro in 1962 was excluded from the 1965 conveyance. DBDC conveyed the property to Ruth Sherman, who then conveyed it to herself and her husband. The Shermans then conveyed the property to Windsor on October 27, 1998.

---

**2.** The trial court made the following finding with respect to the right-of-way conveyance. "By way of an unrecorded deed dated April 8, 1967 ... Edward Brooke and George Brooke together with adjoining property owners conveyed an interest *in the Disputed Land* to [WRRR]." (Trial Court Opinion, Stallone, J.

6/15/99, at 3–4; emphasis added). Upon review of the record, however, it appears that as the Brookes were the fee simple title owners of the disputed land, only they could have conveyed an interest *in the disputed land* to WRRR.

¶ 10 In September 1987, a severe rainstorm washed out the soil underlying a portion of the line of railroad track south of the disputed land, leaving the track suspended in mid-air. On February 26, 1988, a Conrail employee prepared an internal memorandum indicating the segment was "being held for continued rail use because of a proposed sale." On June 25, 1988, Conrail entered into a written sales agreement with Chestnut Hill B & M, Inc. (Chestnut Hill), "to sell the Property for continued operation" and, thereafter, conveyed the right-of-way to Chestnut Hill through an unrecorded quitclaim deed. Chestnut Hill conveyed the right-of-way to Steven Speece through a recorded quitclaim deed and, on August 14, 1991, Speece conveyed the right-of-way to H & K through a recorded quitclaim deed.

> When reviewing a trial court's decision regarding an action to quiet title, we are limited to determining whether the findings of fact that led to the trial court's conclusions of law are supported by competent evidence. "Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence."

*Moore v. Duran*, 455 Pa.Super. 124, 687 A.2d 822, 827 (1996), *appeal denied*, 549 Pa. 703, 700 A.2d 442 (1997), *quoting Thompson v. Maryland & Pennsylvania R.R. Preservation Soc.*, 417 Pa.Super. 216, 612 A.2d 450, 452 (1992).

¶ 11 Birdsboro argues the trial court exceeded its authority by allowing H & K to raise the issue of its right-of-way as an affirmative defense in new matter and then adjudicating H & K's rights. Birdsboro relies upon *Carringer v. Taylor*, 402 Pa.Super. 197, 586 A.2d 928 (1990), *appeal denied*, 533 Pa. 629, 621 A.2d 576 (1992), and *Roskwitalski v. Reiss*, 338 Pa.Super. 85, 487 A.2d 864 (1985), *appeal denied*, 514 Pa. 619, 521 A.2d 933 (1987), to support its

contention that such issue should have been raised in a separate counterclaim.[3]

¶ 12 Upon review, however, we find that both cases are highly distinguishable and inapposite. In *Carringer*, the defendant failed to raise an easement theory in a separate count within his counterclaim and, thus, the trial court found he waived this theory for purposes of his subsequent quiet title action regarding the same tract of land. In *Roskwitalski*, the issue was whether a court of law, not a court of equity, could order specific performance in an action to quiet title. Contrary to Birdsboro's assertion, this Court held that a court of law does possess such a power, which should bind all parties, including "defendants who may assert a counterclaim against the plaintiff." *Roskwitalski*, 487 A.2d at 868. It is clear, therefore, these cases are not applicable to the issues herein.

¶ 13 Birdsboro also avers the trial court erroneously relied upon *Norbeck v. Allenson*, 221 Pa.Super. 422, 293 A.2d 92 (1972), for its contention that H & K's claim to a right-of-way was an affirmative defense properly pleaded in new matter. Birdsboro claims *Norbeck*, wherein the defendant was permitted to raise an affirmative defense of adverse possession in its new matter, is distinguishable because both Windsor and H & K claim interests stemming from actual legal title, not equitable doctrines such as adverse possession.

¶ 14 In *Norbeck*, this Court held that adverse possession should be pleaded affirmatively as new matter. We found "[t]his would be in accord with the generally accepted, but by no means conclusive, position that affirmative defenses are those as to which the defendant has the burden of proof." *Id.*, 293 A.2d at 94. *See also Sechler v. Ensign–Bickford Co.*, 322 Pa.Super. 162, 469 A.2d 233 (1983) (new matter is defined as matter which, taking all allegations of the complaint to be true, is nevertheless a defense to an action). It is

---

**3.** We note counterclaims, in actions at law as well as in equity, are permissive, not mandatory, in Pennsylvania. *See* Pa.R.C.P. 1031 and 1510, **Counterclaim**.

clear *Norbeck's* rationale is applicable herein, where the burden of proving that a right-of-way existed rests on H & K, the party asserting the defense. The trial court, therefore, properly relied upon *Norbeck* to support it finding that H & K's claim to a right-of-way properly was pleaded as new matter.[4] Accordingly, we find Birdsboro is entitled to no relief on this claim.

¶ 15 Birdsboro also asserts the trial court erred in finding a right-of-way in H & K because the 1867 deed, in which the Brookes conveyed an interest in their land, violates the Statute of Frauds in that: 1) it was never recorded; 2) it lacked individual signatures of all parties; 3) it failed to adequately describe the land; and 4) it failed to recite any consideration. In addition, Birdsboro argues the deed is unenforceable because it violates the Pennsylvania Recording Statute.

¶ 16 Windsor argues Birdsboro waived the protection of the Statute of Frauds by failing to raise it in its new matter responding to the claims of H & K and Windsor. Windsor also contends WRRR's construction and operation of a rail line constitutes part or full performance, which takes a conveyance out of the Statute of Frauds and renders the deed enforceable without recordation.

■ ¶ 17 This Court has stated:

The Statute of Frauds is to be used as a shield and not as a sword as it was designed to prevent fraud. It does not make void contracts relating to land which fail to comply with the Statute of Frauds. The purpose of the Statute of Frauds is to avoid the opportunity for fraud and perjury likely to arise from oral conveyances of estates in land.

*Valvano v. Galardi*, 363 Pa.Super. 584, 526 A.2d 1216, 1219 (1987) (citations omitted).

Furthermore, "the Statute of Frauds relating to interests in land is a declaration of public policy and can be waived if it is not raised in the pleadings of a case." *Sage Holding Corp. v. Sage Folding Box Co.*, 391 Pa.Super. 404, 571 A.2d 431, 432 (1990).

¶ 18 In this case, the trial court found Birdsboro's failure to plead the Statute of Frauds in its pleading constitutes waiver of the issue. Nonetheless, the court refuted all of the purported Statute of Frauds violations. The trial court found the Brookes consistently signed all other documents with "E & G Brooke" and, thus, the 1867 deed properly was signed. The trial court relied upon *Fiore v. Fiore*, 405 Pa. 303, 174 A.2d 858 (1961), and *In re Estate of Pentrack*, 486 Pa. 237, 405 A.2d 879 (1979), and held the recording of the 1867 deed is not essential to its validity or to the conveyance of title, rather only delivery was required to protect subsequent purchasers. The trial court also found Birdsboro had actual notice of the right-of-way, since the railroad continued to operate throughout 1962. Furthermore, Birdsboro had constructive notice because both the 1867 WRRR deed and its own 1962 deed expressly referenced the right-of-way.

■ ¶ 19 Upon review of the record, we agree with the trial court that Birdsboro waived protection of the Statute of Frauds for failure to include it in its pleadings. *See Sage Holding Corp., supra*, 571 A.2d at 432 (plaintiffs are not relieved of duty to raise Statute of Fraud defense; defense should be raised in reply to new matter or, in the least, in any pretrial pleading). Nonetheless, the 1867 deed does not violate the Statute of Frauds. The record reveals the Brookes used "E & G Brooke" as their signature

4. We note, however, regardless of the form in which the issue of H & K's right-of-way was presented to the court, the issue would have been adjudicated according to the deeds in evidence. *See Roskwitalski v. Reiss*, 338 Pa.Super. 85, 487 A.2d 864 (1985) (action to quiet title provides full and complete remedy for the removal of every type of cloud on a title to real estate). The trial court, therefore, did not exceed its power to dispose of the action to quiet title.

not only on private documents but, more importantly, on official records, including the Borough of Birdsboro's own map dated 1876. Furthermore, the Statute of Frauds requires written documentation but does not mandate the recording of deeds. It is undisputed that all deeds were reduced to written form, which included an adequate description of the property to be conveyed, and the written provisions placed in both the 1867 and 1962 deeds provided actual notice of the right-of-way. We also find the continued railroad operation during 1962 provided inquiry notice such that Birdsboro should have investigated the extent of the interest. Accordingly, we conclude that Birdsboro's challenge under the Statute of Frauds lacks merit.

¶ 20 Finally, Birdsboro argues H & K and/or its predecessors in title abandoned their interest in the right-of-way. Specifically, Birdsboro contends railroad right-of-ways are distinguishable from private easements because they are in the nature of "defeasible fees", which revert to the grantor when rail operations cease. Birdsboro argues Conrail ceased its operations during the 1980s, filed an application for abandonment on December 11, 1986, and removed some of the tracks. Furthermore, a 1987 flood rendered the tracks inoperable. Windsor asserts that non-use alone does not constitute abandonment. Specifically, Windsor avers that although Conrail filed the application, it did not complete four additional federal statutory requirements for abandonment.

¶ 21 The trial court found that abandonment must be proven by two *prima facie* elements: 1) intent; and 2) external acts. While the court acknowledged that gaps occurred in both railroad operation and maintenance, it found mere non-use and lack of maintenance of a rail line did not establish intent to abandon.

¶ 22 In this case, the record reveals Conrail did not complete all of the statutory requirements for abandonment after filing the initial application. Rather, numer-

ous documents illustrated that the right-of-way was later sold to Chestnut Hill with the express intent of continuing "railroad purposes". In addition, Conrail only removed tracks from areas outside the disputed property and solicited bids in order to repair the flood damage. Accordingly, Birdsboro is entitled to no relief on this claim.

¶ 23 In its cross appeal, Windsor argues the trial court erred in its interpretation of the word "reserving" in the 1962 deed. Specifically, Windsor claims E & G conveyed only the right-of-way to Birdsboro, while reserving the underlying fee, such that the fee was later conveyed to Windsor.

¶ 24 In both its March 19 and June 15, 1999 Orders, the trial court analyzed the express language of the 1962 deed, and found that fees were excluded as "exceptions" in paragraphs (a)(b) and (c), which provide:

(a) EXCEPTING THROUGHOUT Purpart 2 of the same property, now owned by the John T. Dyer Quarry Company ...

(b) EXCEPTING THROUGHOUT the same property which the E. & G. Brooke Land Company granted and conveyed unto Irvin J. Kocher ...

(c) EXCEPTING THROUGHOUT the same property which the E. & G. Brooke Land Company granted and conveyed unto Franklin E. Gauger ...

The disputed right-of-way was excluded in paragraph (d), as a "reservation," along with two other right-of-ways in paragraphs (e) and (f), which provide:

(d) ALSO RESERVING the right-of-way of the Reading Company—Wilmington and Northern Railroad.

(e) ALSO RESERVING the right-of-way of the National Transit Company Pipe Line.

(f) ALSO RESERVING the right of ingress, egress and regress ...

¶ 25 We agree with the trial court and find paragraph (d) clearly reserves a right-of–way and not an entire fee. Accordingly, we find the trial court did not err in holding Windsor does not own fee title to the disputed land.

¶ 26 Based upon the foregoing, we find the findings of fact that led to the trial court's conclusions of law are supported by competent evidence and that the trial court acted properly in disposing of the parties' claims to the disputed land.

¶ 27 Judgments affirmed.