J-A16039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SAMUEL V. SANTUCCI AND VINCENT SANTUCCI, JR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DAVID SANTUCCI, VINCENT J. SANTUCCI, SR., AND ELITE MUSHROOM COMPANY | |
| APPEAL OF: DAVID SANTUCCI | |
| | No. 3123 EDA 2014 |

Appeal from the Judgment Entered October 14, 2014
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2011-02923

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:             **FILED AUGUST 12, 2015**

David Santucci appeals from the judgment entered in the Court of Common Pleas of Chester County in favor of Vincent Santucci, Jr. and Samuel Santucci, directing the recorder of deeds to accept for filing the December 8, 2009 deed transferring to them Vincent Santucci, Sr.'s one-third interest in a parcel of land. After our review, we affirm the judgment

_____

[*] Retired Senior Judge assigned to the Superior Court.

and rely, in part, on the decision authored by the Honorable Howard F. Riley, Jr.[1]

Vincent, Jr. and Samuel commenced this action by filing a complaint on March 18, 2011, seeking to quiet title and to eject Santucci, Sr. and David from the property. The court held a non-jury trial on August 29-30, 2012, and on June 16, 2014, Judge Riley issued a decision and order declaring that Vincent, Jr. and Samuel were the sole owners of the property.

The trial court set forth the facts of this case as follows:

1.      Vincent J. Santucci, Sr. (hereinafter "Santucci, Sr.") is an adult individual who resides in West Grove, Chester County, Pennsylvania and is the father of Vincent J. Santucci, Jr. and David Santucci.

2.      Vincent J. Santucci, Jr. (hereinafter "Vincent, Jr.") . . . is the son of Santucci, Sr.

3.      David Santucci (hereinafter "David") . . . is the son of Santucci, Sr.

4.      Samuel V. Santucci (hereinafter "Samuel") . . . is the son of Vincent, Jr. and the grandson of Santucci, Sr.

5.      Elite Mushroom, Co., Inc. (hereinafter "Elite" or "the Company") is a business corporation, authorized and existing pursuant to the laws of Pennsylvania.

6.      Elite was for many years prior to 2009 in the business of growing and selling mushrooms.

---

[1] The decision and order by the Honorable Howard F. Riley Jr., was adopted as the Opinion of the Honorable Jacqueline C. Cody for purposes of this appeal.

7.    Santucci, Sr. owned the controlling interest in Elite. Vincent, Jr. and David each owned a small minority interest in Elite.

8.    On or about May 7, 2010, Vincent, Jr. and David transferred their shares of the Company to Santucci, Sr. and resigned their positions as officers and directors. At that time, Santucci, Sr. became the sole shareholder of the Company.

9.    Elite operated from two locations, an 8.8 acre location in Avondale, Pennsylvania consisting of three contiguous parcels in New Garden Township, Chester County, Pennsylvania numbered 60-3-3, 60-3-17 and 60-3-18 (hereinafter "Avondale" or "Avondale Property"), and a 40 acre location in West Grove (hereinafter "West Grove").

10.    Avondale was owned by Santucci, Sr. prior to March 19, 2009.

11.    West Grove was owned by the Company until its sale in 2009 or 2010.

12.    Both Vincent, Jr. and his brother, David, were employed in their family's mushroom business and worked with their father for more than twenty-five years until July 2008.

13.    In July of 2008 David had a falling out with his father, Santucci, Sr., and was fired by him. (N.T. at 162)

14.    After the departure of David, Vincent, Jr. and [Samuel] continued to work in the business.

15.    On several occasions after the departure of David, Santucci, Sr. told Vincent, Jr. and [Samuel] that the Company would be theirs. (N.T. at 25)

16.    On or about March 19, 2009, Santucci, Sr. executed a deed (hereinafter referred to as "March 19th deed") to the Avondale premises conveying Avondale to Vincent, Jr. and Samuel.

17.    On or about June 8, 2009, Vincent, Jr. and [Samuel] executed a deed (hereinafter referred to as "June 8th deed") conveying a one-third interest in Avondale back to Santucci, Sr.

- 3 -

18.     On or about December 8, 2009, Santucci, Sr. executed a deed (hereinafter referred to as "December 8th deed") conveying his one-third interest in Avondale back to Vincent, Jr. and [Samuel].

19.     On or about December 13, 2010, Santucci, Sr. executed a deed (hereinafter referred to as December 10, 2010 deed") attempting to convey a one-third interest in Avondale to David.

20.     J. Calvin Williams, Jr. Esquire (hereinafter "Williams") is an attorney who at all times relevant hereto was a member of the Pennsylvania and Delaware Bars.

21.     On or about February 12, 2009, Santucci, Sr. met with his attorney, Williams, and told him that he wanted to transfer the Avondale Property to Santucci, Jr. and Samuel.

22.     The March 19th Deed was prepared by Williams.

23.     On March 19, 2009, Santucci, Sr. met with Williams and executed the March 19th Deed.

24.     Williams notarized Santucci, Sr.'s signature on the deed and had the deed recorded.  (N.T. at 100).

25.     There was nothing in Williams' notes indicating that Santucci, Sr. asked Williams to record the March 19th deed. (N.T. at 109).

26.     During a meeting on May 26, 2009, Williams received a letter from Santucci, Sr. in which he told Williams that he had heard that Vincent, Jr. and Samuel were trying to sell the family business.  He said that he did this [conveyance] to continue the family business which had grown and sold mushrooms for almost one hundred years.

27.     Two days later, on May 28, 2009, Williams sent a letter to Santucci, Sr. advising him of the "error in the March 19th deed" and suggesting that it resulted from an error while correcting the tax parcel numbers and that . . . fixing the deed will avoid a gift tax issue.

28.     Williams admitted that there was no correction of the tax parcel numbers.

29. In response to the letter, Santucci, Sr., Vincent, Jr. and Samuel met with Williams on June 8, 2009 and signed the June 8, 2009 deed (hereinafter the "June 8th Deed").

30. Williams produced all of his office notes in connection with this case. They contain no notes for the meeting where Vincent, Jr. and Samuel met with Williams and the June 8th deed was executed.

31. Williams' office notes do not contain any notes for the meeting at which Santucci, Sr. signed the December 8th deed.

32. Williams did have the June 8th deed recorded in substantially the same manner as the March 19th deed.

33. During the time of the transactions, May through December 2009, Santucci, Sr.'s other children were putting pressure on their mother, Santucci, Sr.'s wife, regarding the deeding of the Avondale properties and other assets of Santucci, Sr..

34. During the time of the transactions, Mrs. Santucci was putting pressure on her husband regarding the Avondale Property and whom it should go to.

35. At one point during the time of the transactions Mrs. Santucci was hounding Santucci, Sr., regarding the distribution of the properties.

36. Although Santucci, Sr.'s mental faculties deteriorated somewhat in 2011 and 2012, he was coherent and knew what he was doing in 2009.

37. There was no reason to question Santucci, Sr.'s mental capacity when he signed the December 8th Deed.

38. At an October 14, 2009 meeting with Williams, Santucci, Sr. told Williams he wanted his name taken off the Avondale Deed.

39. At a November meeting with Williams, Santucci, Sr. told Williams to change the deed to just Vincent, Jr. and [Samuel]'s names.

40. After the December 8th Deed was signed, Williams paper-clipped a piece of paper to it on which he wrote,

"12/8, To be recorded, Chester County, West Chester." "Need Realty Transfer Tx Statement of Value."

41.    Williams did not make any note about being asked to hold up on recording the December 8th Deed.

42.    After signing the December 8th Deed, Santucci, Sr. left the original of the deed with Williams to be recorded.

43.    During the second week of December, 2009 Santucci, Sr. gave a copy of the December 8th Deed to Vincent, Jr. advising him that the tax issue had been resolved and the Avondale Property had been turned back to Vincent, Jr. and his son, [Samuel].

44.    At a December 16 meeting with Williams, as far as Santucci, Sr. was concerned the Avondale Property was in Vincent, Jr. and [Samuel's] names.

45.    As far as Santucci, Sr. was concerned on December 16, 2009, he had given the Avondale property to Vincent, Jr., and [Samuel].

46.    The first mention of the December 8th Deed not being recorded by either Williams or Santucci, Sr. was generated by a telephone message from William H. Mitman, Esquire to Williams on March 10, 2010. That is when Williams wrote on a phone message from his secretary, ". . . deed prepared BUT not recorded per Santucci, Sr.'s request."

47.    Prior to December 27, 2010, Santucci, Sr. had no discussions with Williams about deeding any portion of the Avondale Property to David.

48.    In 2010 at a date after February 23, and before the May 10, 2010 settlement of the litigation, Santucci, Sr. reviewed a civil complaint, verified on February 23, 2010, filed by Vincent, Jr. and [Samuel] against Santucci, Sr. et al.

49.    In the right margin, beside paragraph 18(f) of the aforesaid complaint alleging that Santucci, Sr. exercised control of the corporation solely for the benefit of Santucci, Sr. and with the intent of freezing out Vincent, Jr., Santucci, Sr. wrote, "Not true. Gave him Avondale."

50.      The four deeds at issue were all executed for nominal consideration. They were gifts among family members involving no consideration beyond the nominal fee.

Decision and Order, 6/16/14, at 1-9.

David filed a motion for post-trial relief on June 26, 2014, which Judge Cody denied on October 8, 2014. Following the entry of judgment on October 14, 2014, David filed a timely notice of appeal. In response to an order from the trial court, David filed a statement of matters complained on appeal pursuant to Pa.R.A.P. 1925(b). On November 15, 2014, Judge Cody issued a one-paragraph opinion adopting Judge Riley's decision and order.

On appeal, David raises the following issues for our review:

1. Did the trial court err in ruling as a matter of law that delivery of an executed deed to one's own attorney, with no subsequent delivery to any third party, constitutes legal delivery sufficient to convey title as a gift to a family member?

2. Did the trial court alternatively err in finding that Appellees had proved as a matter of fact that the deed signed by Vincent J. Santucci, Sr., had been delivered in a manner to effectuate a gift of real estate?

3. Did the trial court err in failing to credit the testimony of Calvin Williams, Esquire, and supporting historical and documentary evidence that he was instructed not to record the executed deed?

4. Did the trial court err in failing to adopt the uncontroverted evidence at trial that the alleged grantor continued to exert dominion and control over his share of the property throughout the year 2010 and until December 2010, when the pertinent interest in the property was conveyed by recorded deed to David Santucci?

Appellant's Brief, at 5.

The key issue in this case is whether the December 8th deed conveyed Santucci, Sr.'s one-third interest in the Avondale property, to Vincent, Jr. and Samuel. If it did, then Santucci, Sr. had nothing to convey to David and the December 13, 2010 deed is a nullity. The question surrounding the December 8th deed is that it was never recorded and, David alleges, was never delivered. The March 19th deed and the June 8th deed were recorded and considered and treated by the parties as delivered. Trial Court Decision, 6/16/14 at 10.

In reviewing an action to quiet title, an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion. **Regions Mortgage, Inc. v. Muthler**, 889 A.2d 39, 41 (Pa. 2005). "Ordinarily, an appellate court will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." **Birdsboro Municipal Authority v. Reading Company and Wilmington & Northern Railroad**, 758 A.2d 222, 225 (Pa. Super. 2000).

> The traditional rules of construction to determine [the] intention [of the parties with respect to the transfer of an interest in real property] involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the

instrument, it will be resolved against the party who prepared it. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Consolidation Coal Company v. White*, 875 A.2d 318, 326-27 (Pa. Super. 2005).

To have a valid gift inter vivos, two things must coincide: donative intent on the part of the grantor when the deed was signed; and (2) delivery of the deed to the grantee, either actual or constructive, which divested the donor of all dominion over the property and invested such dominion with the donee. *Loutzenhiser v. Doddo*, 260 A.2d 745, 747 (Pa. 1970).

We have reviewed the transcripts, parties' briefs, and relevant law and we find that Judge Riley's decision thoroughly and correctly disposes of David Santucci's first issue on appeal:

The donative intent was established when on March 19, 2009, Santucci, Sr. executed the March 19th deed giving the Avondale Property to Vincent, Jr. and Samuel. It was shown when Santucci, Sr., at the October 14, 2009 meeting, instructed Williams that he wanted his name removed from the June 8th deed which had conveyed a one third interest back to him. N.T. at 117.

A donative intent was also shown and confirmed in the words and actions of Santucci, Sr. after December, 2009. It was shown when he gave a photocopy of the December 8th Deed to Vincent, Jr. and told him that the tax issue had been resolved and the Avondale Property had been turned back to Vincent, Jr. and his son, [Samuel]. It was confirmed at the December 16, 2009 meeting with Williams when he states that the Avondale Property is in their names.

It was further confirmed when, after reviewing the complaint dated February 23, 2010, in the right margin beside paragraph

- 9 -

18(f) of the aforesaid complaint, alleging that Santucci, Sr. exercised control of the corporation solely for the benefit of Santucci, Sr. and with the intent of freezing out Vincent, Jr., Santucci, Sr. wrote, 'Not true. Gave him Avondale."

Clearly, the evidence shows that when Santucci, Sr. executed the December 8th Deed he intended and believed that he was giving the Avondale Property to his son and grandson. It also establishes that he believed that he had completed the gift when, even after falling out with Vincent, Jr. and [Samuel], he acknowledged their ownership at the December 16, 2009 meeting with Williams.

Trial Court Decision, 6/16/14 at 10-12.

Next, David Santucci asserts that the December 2009 deed did not re-convey Santucci, Sr.'s one-third interest in the Avondale Property because it was neither recorded nor delivered. Because of the asserted failure to record the deed, David claims title to an undivided one-third interest as the grantee on the December 13, 2010 deed from Santucci, Sr. to him.

Although this conveyance was not recorded, "the recording of a deed is not essential to its validity or to the transition of the title." *Fiore v. Fiore*, 174 A.2d 858, 859 (Pa. 1961). The title to real estate may be passed by delivery of a deed without undertaking a recording, since the recording is essential only to protect by constructive notice any subsequent purchasers, mortgagees and new judgment creditors. *Matter of Pentrack's Estate*, 405 A.2d 879 (Pa. 1979); *Malamed v. Sedelsky*, 80 A.2d 853 (Pa. 1951). *Graham v. Lyons*, 546 A.2d 1129 (Pa. Super. 1987).

Whether there has been a delivery of a deed is a question to be determined from the evidence by the trial court. *Mower v. Mower*, 80 A.2d 856, 858 (Pa. 1951). To effect a delivery, it is not essential that the grantor

give the deed directly to the grantee. Delivery is effected if the grantor relinquishes control and gives the deed to a third party either with specific instructions to deliver it to the grantee or if the attendant facts and circumstances indicate that the grantor intended that delivery be made by the third party to the grantee. *Pronzato v. Guerrina,* 163 A.2d 297, 299-300 (Pa. 1960); *Chambley v. Rumbaugh*, 5 A.2d at 171, 173 (Pa. 1939).

Here, the trial court concluded that Attorney Williams' testimony that Santucci, Sr. told him to hold the deed and not record it, was not credible. Decision and Order, 6/16/14. Rather, the court found that after signing the deed, Santucci, Sr. left it with Attorney Williams with the understanding and expectation that by leaving it behind, it would be recorded and delivered.[2] *Id.* Additionally, the December 8th deed was handled in exactly the same manner as the March 19th and June 8th deeds, which were both recorded and delivered after Santucci, Sr.'s meeting with Attorney Williams. *Id.*

"[I]n a bench trial, the trial judge 'as factfinder, is free to believe all, part or none of the evidence presented and therefore, assessments of credibility and conflicts in evidence are for the trial court to resolve.'" *Haan v. Wells,* 103 A.3d 60, 72 (Pa. Super. 2014) (citations omitted). Accordingly, we find no abuse of discretion on the part of Judge Riley in

---

[2] Williams' notes did not mention a request to hold the deed. Rather, there was written evidence, in William's own handwriting, attached to the deed, which says, "to be recorded." *See* Trial Court Decision, 6/16/14, at 14.

failing to credit the testimony of Attorney Williams with respect to directions he received from Santucci, Sr.

Lastly, David Santucci argues that the trial court erred by failing to consider evidence that his father, Santucci, Sr., remained on the Avondale property and exercised dominion and control over it through 2010. Appellant's Brief, at 24. Specifically, David argues there was no testimony or evidence to suggest that after the signing of the December 8, 2009 deed, Santucci, Jr. and Samuel ever exerted dominion or control over the property that was inconsistent with their pre-existing two-thirds ownership.[3]

David also notes that the parties stipulated that Elite Mushroom paid school, county and other 2009 and 2010 taxes on the three parcels that constitute the Avondale property. Furthermore, in March 2011, Santucci, Sr. paid $6,840.91 for the 2010 school tax associated with one of the parcels.

Vincent, Jr. and Samuel do not disagree that Santucci remained present on the property. In fact, they note that Santucci, Sr.'s act of remaining on the property is what led them to seek the ejectment of Santucci, Sr. and to seek rental damages from Santucci, Sr., David and Elite Mushroom. Appellees' Brief, at 13.

In light of the fact that the court determined that Santucci, Sr. had no legal right to use the property after December 8, 2009, yet did not order him

_____

[3] Santucci, Jr. and Samuel continued to collect rent and make repairs as they had done while two-third owners. *See* Appellant's Brief at 26.

to pay fair market value for use of the land, supports Appellees' position that the payment of taxes was not an exercise of absolute dominion and control by Santucci, Sr,. but rather was a payment in lieu of rent that acknowledged ownership by Vincent, Jr. and Samuel of the Avondale property.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/12/2015