J. A21018/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MOHAN KRISHNAN AND VASANTHALLAZMI KRISHNAN, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, | : | |
| | : | |
| Appellee | : | No. 3713 EDA 2015 |

Appeal from the Order Entered December 3, 2015
In the Court of Common Pleas of Chester County
Civil Division at No.: 2013-07246-RC

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED OCTOBER 18, 2016**

Appellants, Mohan Krishnan and Vasanthallazmi Krishnan, plaintiffs below, appeal from the December 3, 2015 Order entered in the Chester County Court of Common Pleas following a bench trial in this quiet title action.[1] We affirm on the basis of the trial court's Opinion.

The relevant facts, as gleaned from the trial court's July 30, 2015 Decision and the certified record, are as follows. On August 6, 2004, Appellants sold the real property and home located at 1360 Shadow Oak

---

[1] Appellants purport to appeal from the November 4, 2015 Order denying their Post-Trial Motion. Orders denying Post-Trial Motions are interlocutory and generally not appealable; rather, the subsequent Order entering Judgment is appealable. **Prime Medica Associates v. Valley Forge Ins. Co.**, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009). The caption has been revised accordingly.

Drive in Malvern, Pennsylvania to Joye McDonald-Hamer ("McDonald-Hamer") for $745,000.00. McDonald-Hamer funded the transaction with a $558,750.00 purchase money mortgage from Long Beach Mortgage Company ("Long Beach"),[2] a $186,250.00 purchase money mortgage from Appellants, and a $39,389.32 cash assist from Appellants.

Closing occurred, and the HUD-1 settlement statement reflected each of the mortgages. Appellants and Long Beach recorded their purchase money mortgages in the Chester County Recorder of Deeds Office on the same date and at the same time: at 2:11P.M. on August 11, 2004. Numerous documents compiled in connection with the sale indicated that Appellants' purchase money mortgage was second in lien priority. These included: (1) McDonald-Hamer's August 6, 2004 Uniform Residential Loan Application; (2) Long Beach Mortgage Company's broker loan submission dated July 30, 2004; (3) Long Beach Mortgage Company's underwriting approval sheet; (4) Long Beach Mortgage Company's pre-defined underwriting conditions worksheet; (5) the title commitment issued on August 4, 2004, indicating a first mortgage in favor of Long Beach; (6) McDonald-Hamer's USAA homeowner's insurance policy dated January 7, 2007; (7) Long Beach Mortgage Company's verification of recording dated

---

[2] Long Beach Mortgage Company was a subsidiary of Washington Mutual Bank. Washington Mutual Bank failed, and both JPMorgan Chase and Deutsche Bank serviced the loan. Here, Appellee Deutsche Bank is trustee for Long Beach Mortgage Company.

August 6, 2004; (8) McDonald-Hamer's attorney's preliminary certificate and report on title dated August 4, 2004; and (9) the attorney's final certificates dated August 23, 2004. These documents, to which Appellants never objected, explicitly stated that Long Beach's mortgage had first priority.

After McDonald-Hamer defaulted on Appellants' mortgage, Appellant called Long Beach's successor at the time, Washington Mutual, four times during the period from June of 2005 to December of 2006 to determine whether McDonald-Hamer was making payments on that mortgage. Each time Appellant identified himself as the holder of a second mortgage on the property.

In August of 2007, Deutsche Bank ("Appellee") instituted a mortgage foreclosure action in Chester County Court of Common Pleas. On August 22, 2008, Appellants instituted their own mortgage foreclosure action. They subsequently obtained a Judgment by consent, entered on September 17, 2009, in the amount of $260,542.51. At a Sheriff's Sale of the property on June 27, 2011, Appellants bid successfully and obtained title to the property.

Appellants then commenced the instant quiet title action, claiming that Appellee's mortgage should have been divested at the Sheriff's Sale pursuant to 42 Pa.C.S. § 8152 because it was not first in priority.

At the bench trial, Appellant Mohan Krishnan testified. The court admitted into evidence the documents listed **supra** showing that Appellants were second in lien priority.

Following the trial, the court concluded that Appellee held a first mortgage lien on the property. The court also concluded that the evidence showed that Appellants had never objected to the documents supporting the sale to McDonald-Hamer, which indicated Long Beach had priority and that Appellants' mortgage was a secondary lien.[3] **See** Trial Court Decision, dated 7/30/15, at 5.

Appellants filed a Post-Trial Motion, which the trial court denied on November 4, 2015. On December 3, 2015, the trial court entered Judgment in favor of Appellee.

On December 3, 2015, Appellants filed a Notice of Appeal. Both Appellants and the trial court complied with Pa.R.A.P. 1925.[4]

Appellants present the following issue for our review:

> In the face of contrary language in: i) the final HUD-1 [settlement statement], ii) the title insurance policy, and iii) the single communication, from an institutional lender to an individual lender, addressing priority; and, where no actual evidence of any agreement to subordinate exists, may a Court, nevertheless, assume an agreement and promote the priority of an institutional lenders' Purchase Money Mortgage, over that of an individual lenders' Purchase Money Mortgage, simply because

---

[3] In its Pa.R.A.P. 1925(a) Opinion, the court observed: "I will note only that I cited to the apparent agreement between the parties establishing that [Appellants] held the second mortgage. Such agreement was demonstrated by the evidence presented at trial, including testimony, that when faced with evidence, such as the title commitments or the homeowner's insurance, that the [Appellants] held a second mortgage, they did not protest, object or raise any concern." Trial Court Opinion, dated 1/14/16, at 3.

[4] The trial court's Pa.R.A.P. 1925(a) Opinion dated January 14, 2016, incorporated and attached its July 30, 2015 Decision.

the holder of the institutional mortgage is a bank, which desired a senior position?

Appellants' Brief at 3.

In reviewing a judgment entered in a quiet title action, this Court is limited to determining "whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." ***Regions Mortg., Inc. v. Muthler***, 889 A.2d 39, 41 (Pa. 2005) (citation and quotation marks omitted). This Court "will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence." ***Birdsboro Mun. Authority v. Reading Co. and Wilmington & Northern R.R.***, 758 A.2d 222, 225 (Pa. Super. 2000) (citations and quotation marks omitted).

A sheriff's sale of an encumbered property affects mortgage liens on the property as follows:

> **§ 8152.  Judicial sale as affecting lien of mortgage**
>
> *        *        *
>
> **(c) Sale on prior lien.**—A judicial or other sale of real estate in proceedings under a prior ground rent, or in foreclosure of a prior mortgage, shall discharge a mortgage later in lien.

42 Pa.C.S. § 8152(c). ***See also Public Federal Sav. & Loan Ass'n v. Neumann***, 483 A.2d 505, 507 (Pa. Super. 1984) (stating sale of real property does not affect lien if mortgage is prior to all other liens on property).

42 Pa.C.S. § 8141 governs the priority of competing purchase money mortgage liens against real property. **See** 42 Pa.C.S. § 8141 (entitled, "Time from which liens have priority"). "The priority of liens as they appear on record is *prima facie* evidence of the manner in which the proceeds are to be distributed." **Farmers Trust Co. v. Bomberger**, 523 A.2d 790, 792 (Pa. Super. 1987). **See also First Citizens Nat. Bank v. Sherwood**, 879 A.2d 178, 182 (Pa. 2005) (stating recording of mortgage serves as constructive notice of mortgage to subsequent purchasers).

In determining the rights of parties to a dispute, the trial court must consider "not only [] the recorded documents, but also [] any agreement by the parties which affects lien priorities between them." **Farmers Trust**, **supra** at 793 (citations omitted).

Here, Appellants aver that the trial court improperly concluded Appellants' lien was secondary to Appellee's lien. Appellants' Brief at 11-12, 17-29. Appellants argue that the trial court ignored some evidence while improperly crediting other evidence when finding the existence of an "agreement to subordinate." Appellants' Brief at 11-12. They essentially reargue their case and conclude that the trial court erred in reaching its conclusion.

Our review of the record and the relevant law indicates that the trial court's findings of fact are supported by competent evidence and the trial court did not err as a matter of law. The Honorable Jeffrey R. Sommer, who

presided at trial, has authored a comprehensive, thorough, and well-reasoned opinion, citing to the record and relevant case law in addressing Appellants' challenge. We affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion, dated 1/14/16, at 3-5 (incorporating the detailed analysis of the 7/30/15 Decision, and concluding that: (1) the trial court properly followed 42 Pa.C.S. § 8141 in determining mortgage priority and the trial court did not "greatly expand any basis for revising lien priority[;]" (2) the evidence at trial, including testimony from Appellant, established that Appellants held a second mortgage; (3) Appellants had not protested, objected, or raised any concern at the time of the McDonald-Hamer transaction when presented with documentary evidence that Appellants held a second mortgage; and, accordingly, (4) an agreement existed between the parties that set the statutory lien priority schedule).

The parties are instructed to attach a copy of the trial court's January 14, 2016 Opinion and the July 30, 2015 Decision to all future filings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2016

MOHAN KRISHNAN and : IN THE COURT OF COMMON PLEAS
VASANTHALAXMI KRISHNAN :
: CHESTER COUNTY, PENNSYLVANIA
vs. :
:
DEUTSCHE BANK NATIONAL TRUST : NO. 13-07246
CO., as Trustee for LONG BEACH :
MORTGAGE LOAN TRUST 2004-6 : CIVIL ACTION

Sommer, J. January 14, 2016

## OPINION PURSUANT TO Pa.R.A.P. 1925

I. Procedural History

This matter has come before me as a result of a Notice of Appeal filed by Mohan Krishnan and Vasanthalaxmi Krishnan (hereinafter "Plaintiffs"). The appeal, filed on December 3, 2015, was from the Order entered on November 4, 2015, denying Plaintiff's Post-Trial Motion following trial on Plaintiffs' action to quiet title whereby judgment was entered in favor of Defendant, Deutsche Bank National Trust Co., as Trustee for Long Beach Mortgage Loan Trust 2004-6 (hereinafter "Long Beach" or "Bank").

On December 3, 2015, an Order was issued directing Plaintiffs to file a Concise Statement of Matters Complained Of on Appeal. Plaintiffs timely submitted their Concise Statement on December 22, 2015. The matter is now ready for determination.

II. Facts:

The relevant facts have been set forth at length in my Decision pursuant to Pa.R.C.P 1038, a copy of which is attached hereto and incorporated herein by reference.

III. Issues:

Plaintiffs' Concise Statement of Matters Complained Of on Appeal consists of three alleged errors by this Court, as follows:

1. Plaintiffs allege that this Court erred by not following the statutory scheme set forth in 42 Pa.C.S.A §8141(a) to determine which mortgage was delivered first in order to determine priority and then the Court erred by not looking for an agreement between the parties which might have revised the statutory lien priority.

2. Plaintiffs allege that this Court erred by "greatly expanding the basis for revising lien priority to include inquiry into: 1) the policies of a bank, 2) whether or not a person expecting to receive a purchase money mortgage had a full understanding of the statutory lien priories of purchase money mortgages, 3) the actions of third parties, and numerous other factors well beyond the agreements of the lien holders to modify statutory lien priority."

3. Plaintiffs allege that this Court erred by purportedly setting priority based on "1) documents created by third parties such as insurance policies; 2) the fact that Plaintiff (an octogenarian, whose first language is not English) seemed to hesitate and answer questions relating to the legal impact of documents in an evasive manner; 3) testimony by a convicted felon to the effect that his wife, the buyer of the property, told Long Beach Mortgage that the Krishnan mortgage was intended to be a second mortgage; 4) testimony that Long Beach Mortgage had an underwriting policy. that required their mortgages to be in a first position; 5) testimony of the Pliantiff that he identified himself to a representative of JPMorgageChase [sic] as the holder of a second mortgage, after that representative refused to speak to him unless he so identified himself; 6) disregarding the fact that the HUD-1 clearly identified the

2

Plaintiff's loan as a purchase money obligation; 7) disregarding the fact that the Plaintiff's mortgage was an exception on Long Beach Mortgage's title insurance policy; and 8) disregarding the fact that there was no actual agreement between Plaintiff and Long Beach Mortgage or its assignees regarding priority."

IV.     Holding:

1.     This Court did not err as it followed the appropriate statutory scheme to determine mortgage priority and considered, and even cited to, the agreement to which Plaintiff refers.

2.     This Court did not err by "greatly expanding" the basis for revising lien priority.

3.     This Court did not err by considering the factors set forth by Appellants, including certain credibility factors, as that is the trial court's role.

V.     Rationale:

1. The Court followed 42 Pa.C.S.A §8141(1) and gave appropriate consideration to any agreement between the parties to determine lien priority

My analysis is set forth in great detail in the Decision pursuant to Pa.R.C.P. 1038 and I do not feel that there is any benefit to be gained by restating same here. I will note only that I cited to the apparent agreement between the parties establishing that Plaintiffs held the second mortgage. Such agreement was demonstrated by the evidence presented at trial, including testimony, that when faced with evidence, such as the title commitments or the homeowner's insurance, that the Plaintiffs held a second mortgage, they did not protest, object or raise any concern. Therefore, I defer to said Decision and respectfully request that the Superior Court affirm my ruling.

2. The Court did not greatly expand any basis for revising lien priority

3

As required by existing case law, I was required to examine the evidence to determine the existence, if any, of an agreement between the parties that might revise the statutory lien priority. I did so. In my evaluation and consideration of the evidence presented, I determined that an agreement did exist between the parties and that such agreement evidenced that the Plaintiffs agreed to be the holder of a second mortgage. Plaintiffs have cited to no case law that requires such agreement be written.

Plaintiffs highlight a number of factors that this Court erroneously considered in making its determination. However, I believe that any consideration of such factors and the weight afforded to each merely amounts to my analysis of all the evidence presented at trial. This can hardly be an error of law. Accordingly, as this Court determined, the conduct of the parties and various documents evidencing Plaintiffs' status as a second mortgage holder, and lack of objections by Plaintiffs to that status, constitute sufficient evidence of an agreement between the parties that Plaintiffs agreed to hold a second mortgage.

3. The Court did not err in considering various factors, including credibility of the witnesses at trial, in making its decision

The role of the trial court is to assess and determine credibility of the witnesses and evidence appearing before it. Thus, any credibility determinations of this Court must be given great weight by the appellate court. I evaluated the credibility of all witnesses at trial, including Plaintiff. Specifically, I found Plaintiff's testimony to be hesitant on matters with which he should be familiar, despite the fact that English is not his first language, and evasive on relatively straightforward inquiries. Moreover, based in part upon Plaintiff's own testimony whereby he identified himself as the holder of a second mortgage, I concluded that Plaintiffs indeed held a second

4

mortgage. Plaintiffs simply do not get to pick and choose which parts of their testimony I am compelled to believe or disbelieve. That is my role as the judge as the fact-finder and assessor of credibility. I considered Plaintiff's testimony as a whole, including his demeanor at trial, and found his credibility to be lacking.

Any further issues raised by Plaintiffs have been addressed by my Decision pursuant to Pa.R.C.P. 1038 to which I do not feel I cannot further supplement at this time. Therefore, I defer to said Decision and respectfully request that the Superior Court affirm my ruling.

All of which is respectfully submitted.

BY THE COURT:

Jeffrey R. Sommer

Jeffrey R. Sommer                    J.

5

MOHAN KRISHNAN and : IN THE COURT OF COMMON PLEAS
VASANTHALAXMI KRISHNAN :
: CHESTER COUNTY, PENNSYLVANIA
Vs. :

DEUTSCHE BANK NATIONAL TRUST : NO. 13-07246
CO., as Trustee for LONG BEACH :
MORTGAGE LOAN TRUST 2004-6 : CIVIL ACTION

James S. Tupitza, Esquire, on behalf of the Plaintiffs
Edward J. Hayes, Esquire, on behalf of the Defendant

## DECISION PURSUANT TO Pa.R.C.P. 1038

I.    Procedural Setting:

This matter comes before us as a result of Mohan and Vasanthalaxmi Krishnan's (hereinafter "Plaintiffs") filing of an Action to Quiet Title against Deutsche Bank National Trust Co., as Trustee for Long Beach Mortgage Loan Trust 2004-6 (hereinafter "Long Beach" or "Bank") on July 25, 2013. On September 26, 2013, Plaintiffs filed a Praecipe to enter a default judgment against Defendant as a result of the alleged failure to respond to the Complaint. On October 1, 2013, Plaintiff filed a Motion for Default Judgment for failure to respond. On October 7, 2013, Defendant responded and filed a Petition to Open and Strike the default. On October 17, 2013, this Court denied Plaintiff's Motion for Default Judgment.

On December 4, 2013, the parties entered into a Stipulation to open and vacate the judgment. On February 18, 2014, Plaintiffs filed a Motion for Judgment on the Pleadings. That motion was withdrawn voluntarily. Defendant filed its Answer and New Matter on March 14, 2014. Plaintiffs filed their Reply on March 25, 2014. Plaintiffs then filed a Motion for Judgment on Pleadings. Following the filing of

Defendant's reply, this Court denied Plaintiffs' motion. The matter was set down for a trial without a jury on July 9, 2015.

II.     Facts:

On August 6, 2004, the Plaintiffs sold the real property and home located at 1360 Shadow Oak Drive, Malvern, PA 19355 (hereinafter the "Property") to Joye McDonald-Hamer (hereinafter "Hamer") for the sum of $745,000.00. The transaction was funded as follows: $558,750.00 as a loan from Long Beach Mortgage Company; $186,250.00 loaned by the Plaintiffs; and, $39,389.32 in cash from the Plaintiffs. *See, Exhibit P-16.*

To secure the repayment of the Long Beach loan, Hamer executed and delivered a mortgage on the Property in favor of the bank. The mortgage was recorded in the Office for the Recorder of Deeds of Chester County at Book 6248, Page 2323. In order to secure the repayment of the Plaintiffs' loan, Hamer executed and delivered a mortgage on the Property in favor of the Plaintiffs. The amount of the mortgage was for $225,000.00. Interestingly, at trial no one could explain why the mortgage amount was significantly in excess of the loan amount. When questioned directly by the Court on the issue that perhaps the mortgage amount was that of the combined loan and cash put up by the Plaintiffs, Plaintiff denied a) that he had given a $39,000 cash assist, b) denied that the addenda reflecting the cash assist was authentic, and c) denied that his loan plus the aforementioned cash assist added up approximately $225,000.00.

The Plaintiff was questioned about the discrepancy and the circumstances surrounding the settlement. Plaintiff testified that he was not sure why the numbers were different. Plaintiff could not recall any of the details of the transaction. Plaintiff

2

did not agree that the Agreement of Sale, which contained several Addenda (including a further seller assist in the amount of $39,000) was an accurate reflection of the deal. Plaintiff appeared evasive and combative on what were relatively straightforward questions about the structure of the transaction. This evasiveness also surrounded the fundamental question about this transaction; what lien position did the parties believe they were assuming?

In the Hamer loan application dated August 6, 2004, Hamer disclosed that she had agreed to a second mortgage with the Plaintiff. *See, Exhibit D-5.* The broker loan submission which was contained with the Long Beach file states the Bank would obtain a first mortgage and the Plaintiffs would provide secondary financing. *See, Exhibit D-6.* The Bank's underwriting approval sheet indicates that the mortgage to Long Beach would be primary and the Plaintiffs would be obtaining a second mortgage. *See, Exhibit D-7.* The Bank's pre-defined underwriting conditions worksheet states that the Plaintiffs would obtain a second mortgage on the property. *See, Exhibit D-8.*

Both the Plaintiffs and the Bank sought title insurance in connection with their mortgages. The title commitment issued to the Bank did not show a mortgage in favor of the Plaintiffs. *See, Exhibit P-5.* The title commitment issued to Hamer identified a proposed first mortgage in favor of the bank. *See, Exhibit P-6.* Settlement on the property occurred on August 6, 2004.

At settlement, the HUD-1 Sheet reflects each of the mortgages. *See, Exhibit P-16.* Following the closing, the Bank's paperwork was delivered to the agent for recording. The Plaintiffs received their paperwork for recording. The Bank's mortgage

3

was recorded immediately at Book 6619, Page 2030. The Plaintiffs' mortgage was recorded at Book 6248, Page 2334. The date and time stamps show that the Bank's mortgage was recorded first.

Each party required Hamer to name them on the homeowner's insurance policy, in order to protect their interests. The policy designated the <u>Bank as the first mortgage</u> and the <u>Plaintiffs as the second mortgage</u>. The declaration page was delivered to the Plaintiffs. At no time did they protest these designations.

Hamer was eventually sued in the Chester County Court of Common Pleas by the Bank in a mortgage foreclosure action. Upon receiving notice, the Plaintiffs began calling the Bank to determine the status of the action. The business records kept contemporaneously with the events show that on June 27, 2005, June 12, 2006, June 13, 2006 and December 13, 2006 the Plaintiff telephoned the Bank and <u>identified himself as the holder of a second mortgage</u> on the Hamer property. *See, Exhibit D-23.*

On August 22, 2008 Plaintiffs commenced an action against Hamer seeking to foreclose on their mortgage. *See, Krishnan v. Hamer, Chester County Court of Common Pleas 2008-9148-CA.* On September 17, 2009, Plaintiffs obtained a judgment by consent in the amount of $260,542.51. After entering the judgment, the Plaintiffs exposed the property to Sheriff's Sale. On May 19, 2011, the Plaintiffs were the successful bidders. By deed dated June 27, 2011, the Sheriff transferred the title to the Plaintiffs.

Plaintiffs then commenced the instant matter seeking to Quiet Title in the property. Plaintiffs argue that the Bank's mortgage should have been divested at the Sheriff's Sale and to leave it in place creates a cloud on their title. The Bank takes the

4

position that as a first mortgage lien on the property, it is protected from divestiture at a Sheriff's Sale by statute. See, 42 Pa.C.S.A. § 8152. Therefore, they are required to review the facts to determine whether the Bank's mortgage is a first mortgage lien on the property.

III.   ISSUE:

Whether the Bank's mortgage was a first mortgage lien on the property?

IV.   HOLDING:

Yes, the Bank's mortgage was a first mortgage lien on the property.

V.   RATIONALE:

The status of competing liens on the record is *prima facie* evidence of their respective priorities. See, *Farmers Trust Company v. Baumberger*, 362 Pa. Super. 92, 523 A.2d 790 (1987). The evidence reveals that the Bank's mortgage and the Krishnans' mortgage were recorded on the same date. Arguably, they would hold equal lien priority under 42 Pa.C.S.A. § 8141. However, when determining respective priorities of competing liens, this court must give consideration not only to the recorded documents but to any agreement by the parties which reflect the lien priorities between them. See, *Farmers Trust Company, supra.* If one of the two competing lienholders can establish evidence that it is entitled to priority, then priority will be afforded to that party. *Id.*

The Plaintiffs' sole support for their contention is that neither mortgage states on its face whether it is a first or a second mortgage. This is true. It is also true that the documents do not reflect a priority. We know that both mortgages are purchase

5

money mortgages. We know that the mortgages were signed at the same time and filed on the same date, although the Bank's mortgage was recorded first.

In reviewing these types of facts in cases, the Superior Court has held:

> The priority of liens as they appear on record is *prima facie* evidence of the manner in which the proceeds are to be distributed. [citations omitted] However, if the acceptant can produce evidence he is equitably entitled to priority, the order of payment of proceeds of a foreclosure will be changed. See, *Farmers Trust, Id.*

Given that the documents are silent, we then look to give consideration to any statements and agreements of the parties. The testimony was clear that the original seller of the property, the Plaintiffs, understood and accepted that they would have a second mortgage junior to that of the Bank.

All of the evidence that was produced at trial revealed that the Plaintiffs accepted a second mortgage, knew that it was a second mortgage, and represented to the Bank that it held the second mortgage. The testimony clearly revealed that when faced with evidence, such as the title commitments, or the homeowner's insurance, that the Plaintiffs held a second mortgage, they did not protest, object or raise any concern.

All of the evidence reflects that at the time surrounding the purchase of and settlement on the property, the plaintiffs knew they were taking a second mortgage, accepted that they were taking a second mortgage, represented that they were taking a second mortgage. Only now does the plaintiffs' story equivocate. The court took great pains to observe the parties as they testified. The Plaintiffs' testimony was hesitant and evasive. There were times during questioning that the Plaintiff was unnecessary combative and his memory seemed to falter. When asked directly

6

whether he had represented to the Bank and others that he held a second mortgage, the Plaintiff was evasive and appeared less than forthcoming.

It is our conclusion that the evidence is overwhelming that the Plaintiffs took a subordinate lien position on the property. They did so knowingly, and without reservation. They represented this knowledge to others, including the Bank, and only began to assert this "co-equal status" once they had foreclosed on the Hamers.

In Quiet Title actions, the burden of proof is on the plaintiff. *See, Grace Building v. Parchinsky,* 467 A.2d 94 (Pa. Cmwlth. 1983). The plaintiff in a Quiet Title action is required to prove his case by a preponderance of the evidence. *See, Grace Building v. Parchinsky, supra.; Moore v. Commonwealth,* 566 A.2d 905 (Pa. Cmwlth. 1989). The Plaintiffs in the instant case did not meet that burden of proof. In fact, it was quite the opposite.

Therefore, we conclude that the Defendant holds a first mortgage. By statute a first mortgage is not divested at a Sheriff's Sale. *See, 42 Pa.C.S.A. § 8152.* By finding as a fact that the Defendant holds a first mortgage, the Plaintiffs' action to Quiet Title must fail. Therefore, we find for the Defendant, Deutsche Bank National Trust Co.

BY THE COURT:

Date: July 30, 2015

Jeffrey R. Sommer                    J.

7